

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

WALTER S. BENNETT,

    Plaintiff,

v.

BANK OF AMERICA, N.A., BAC HOME
LOANS SERVICING, L.P., and
PROFESSIONAL FORECLOSURE
CORPORATION OF VIRGINIA

    Defendants.

Action No. 3:11-CV-003

MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Walter S. Bennett's Motion to Remand, Defendant Professional Foreclosure Corporation of Virginia's ("PFCV") Motion to Dismiss, and Defendant Bank of America, N.A.'s ("Bank of America") Motion to Dismiss. The Court grants Bennett's Motion to Remand.

I. Statement of the Case

Bennett seeks a judicial determination of any obligations the defendants owe him under the Department of Treasury's Home Affordable Modification Program (HAMP). Bennett alleges several state-law claims requiring the Court to construe Bank of America's purported obligations under HAMP. The Treasury Department created the Making Home Affordable (MHA) program in 2009 and then created HAMP as a subprogram of MHA. Under HAMP, the federal government encourages participating servicers to modify struggling homeowners' mortgage obligations in order to make monthly payments more affordable. *See Zeller v. Aurora Loan*

1

*Services, LLC*, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010). According to the Amended Complaint, Bank of America entered into a HAMP Servicer Participation Agreement ("SAP") and promised to abide by the obligations the program imposed.

Bennett was a party to a mortgage loan with Bank of America, evidenced by a promissory note and deed of trust. Bennett attempted to take advantage of the mortgage restructuring opportunities HAMP provided borrowers. He contacted Bank of America's subsidiary BAC Home Loans Servicing, L.P. ("BAC"), seeking relief through HAMP. BAC purportedly told Bennett he could not participate in the program unless he was in default on his loan, a statement Bennett now claims was untrue. Bennett also contends BAC officials disingenuously told him he might qualify for HAMP relief and encouraged him to regularly check on his eligibility. Bennett stopped making payments in reliance on BAC's statement, after which BAC foreclosed on Bennett's home with the help of PFCV.

Bennett alleges he never received the notice of possible modification terms required by HAMP, and that Bank of America and BAC did not evaluate him for HAMP eligibility before foreclosing on his home, which he contends HAMP requires. Mindful of the fact that courts have, time and again, concluded that HAMP does not provide a private right of action for aggrieved borrowers, Bennett asserts state-law claims for breach of contract, fraud, and trespass.

II. Discussion

  A. *The Amended Complaint does not raise a substantial federal question.*

Bank of America contends removal was proper for three reasons. First, Bank of America argues at least one of Bennett's claims raises a substantial federal question. A party may remove a civil action filed in state court when the federal court has federal question jurisdiction over the

case. 28 U.S.C. § 1441(b) (2002). The party seeking removal must demonstrate federal jurisdiction. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). A federal court must construe removal jurisdiction narrowly, since removal raises significant federalism concerns. *Id.* When federal jurisdiction is doubtful, remand is necessary. *Id.*

None of Bennett's claims originate under federal law. As a result, federal question jurisdiction exists over this action only if the Amended Complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). A substantial federal question will often stem from the action of a federal agency, and the question's resolution must dispose of the case and control numerous other ones. *Morgan Cty. War Mem'l Hosp. ex rel. Bd. of Dirs of War Mem'l Hosp. v. Baker*, 314 Fed. App'x 529, 536 (4th Cir. 2008) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 7009 (2006)). This category of cases is "special and small." *Empire Healthchoice*, 547 U.S. at 699. A complaint does not raise a substantial federal question simply because it implicates federal law in some way, or because federal law attaches to an essential element to the plaintiff's claim. *Id.* at 701 ("[A] state court . . . is competent to apply federal law, to the extent it is relevant[.]").

Bank of America argues each of Bennett's claims raises a substantial federal question, insofar as they may involve the interpretation of HAMP guidelines. The Court disagrees. Even though Bennett's claims involve HAMP guidelines, the Amended Complaint does not raise a substantial federal question. Whether BAC breached the parties' contract by allegedly violating HAMP guidelines is a question of Virginia contract law. The primary issues in this case are whether the defendants violated the terms of the deed, and whether the defendants' purported

3

failure to comply with HAMP violated other state-law duties. A construction of HAMP and application of its guidelines to Bennett's deed could have the effect of substantially altering the content of Virginia contract, by incorporating into Virginia law any obligations the Court decided HAMP imposed. The same can be said for Bennett's tort claims. Hence, the conclusion that the Amended Complaint raises a substantial federal question would drastically upset the balance between federal and state judicial responsibilities. The creation of new state-law obligations would be the kind of "disruptive portent" *Grable* requires courts to consider "in exercising federal jurisdiction." 545 U.S. at 314. Furthermore, the underlying dispute does not stem from the action of a federal agency. Additionally, since Bennett claims BAC fraudulently misrepresented HAMP requirements, a construction of HAMP guidelines alone will not dispose of Bennett's claims. Considering these factors with the rule that the court must construe removal jurisdiction narrowly, remand is proper.[1] *Mulcahey*, 29 F.3d at 151.

Bank of America offers in rebuttal *Studio Frames Ltd. v. Standard Fire Insurance*, 369 F.3d 376 (4th Cir. 2004), a pre-*Grable* case governed by *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27 (1983). In *Studio Frames*, an art gallery was required to purchase flood insurance under the National Flood Insurance Program (NFIP) and its implementing regulations. 369 F.3d at 378. *See* 42 U.S.C. §§ 4001 et seq.; 44 C.F.R. §§ 61-62. The gallery sued its insurer for breach of contract after a flood damaged the gallery. 369 F.3d at 378. The panel concluded the case raised a substantial federal question, since the contract at issue "hinge[d] on the court's interpretation of a standard form insurance policy issued pursuant to the NFIP and codified in federal regulations," 369 F.3d at 380, and therefore "necessarily

---

[1] Several courts have also concluded the insertion of HAMP guidelines to a plaintiff's claim does not raise a substantial federal question. *See, e.g., Zeller*, 2010 WL 3219134 slip op. at *2; *Garundo v. Nat'l Bank of Arizona*, 738 F.Supp.2d 1004 (D. Ariz. 2010); *McCurdy v. Wells Fargo Bank, N.A.*, 2010 WL 4102943, at *2 (D. Nev. Oct. 18, 2010).

depend[ed] on the resolution of a substantial question of federal law." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 27).

*Studio Frames* is distinguishable from this case, for two reasons. First, the Fourth Circuit decided that case under the less stringent standard of *Franchise Tax Board*, where the Supreme Court had yet to instruct courts to "always" assess "any disruptive portent in exercising federal jurisdiction." *Grable*, 545 U.S. at 314. Second, the federal interest involved in *Studio Frames* was decidedly more pronounced than the one here. Federal common law controlled the interpretation of the insurance policy in *Studio Frames*, as it does all policies issued pursuant to the NFIP. 369 F.3d at 380. There is no indication that federal common law controls a contract between a borrower and a loan servicer that participates in HAMP. In fact, the relevance of HAMP guidelines to a private contract between a borrower and lender is entirely unclear and is, in this case, properly a question for a Virginia state court.

The latter point also distinguishes the second case upon which Bank of America relies, *Virginia Timberline, LLC v. Appalachian Power Co.* 2006 WL 1993557 (W.D. Va. July 13, 2006). In *Virginia Timberline*, the parties disputed whether the terms and conditions of a license issued by the Federal Energy Regulatory Commission (FERC) allowed the plaintiff, the holder of an easement over the defendant's land, to build boat docks on the easement. 2006 WL 1993557, at *3. Examining Supreme Court cases explaining that the federal government had an interest in maintaining a federal forum for the application of FERC license, the court concluded the dispute raised a substantial federal question. *Id.* at *5-6. *See Grable*, 545 U.S. at 315; *First Ia. Hydro-Elec. Co-op v. Fed. Power Comm'n*, 328 U.S. 152, 172 (1946). Bennett's claims do not implicate a similar federal interest. Here, federal guidelines may or may not be incorporated into a contract between two private parties governed by state law. No federal agency has a direct

interest in the construction of Bennett's mortgage loan.

B. *Bennett's claims are not completely preempted.*

Bank of America next argues the National Bank Act ("NBA") completely preempts state-law claims like those Bennett alleges. *See* 12 U.S.C. §§ 1 et seq. Congress impliedly preempts state law when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (citation omitted). When Congress "completely preempts" state law in this way, the preempting federal statute causes the preempted state claim to be converted into a federal claim; a party asserting a state claim "simply has brought a mislabeled federal claim, which may be asserted under [the] federal statute." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003). Since the asserted state-law claim is in reality a federal claim, the complaint raises a federal question and the case is removable to federal court. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2005); *Pinney*, 402 F.3d at 449.

Federal preemption only converts a state-law claim into a federal one when a federal claim replaces the preempted state cause of action. *King*, 337 F.3d at 425 (describing the existence of a federal claim a "vital feature" of complete preemption). Where no federal claim replaces the state-law cause of action, preemption functions only as a federal defense. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *King*, 337 F.3d at 424. As the Fourth Circuit has explained, "[w]here no discernable federal cause of action exists on a plaintiff's claim, there is no complete preemption, for in such cases there is no federal cause of action that Congress intended to be the exclusive remedy for the alleged wrong." *Id.* Because complete preemption "undermines the plaintiff's traditional ability to plead under the law of his choosing," the Supreme Court has, by its own admission, been "reluctant" to find complete preemption. *Metro.*

*Life Ins. Co*, 481 U.S. at 65. *See Lontz v. Tharp*, 413 F.3d 435, 440-41 (4th Cir. 2005).

In *Beneficial National Bank*, the Supreme Court held that the NBA provides the exclusive claim for usury claims against national banks. 539 U.S. at 10-11. Bank of America contends *Beneficial National Bank* held that the National Bank Act "preempts state law." (Def.'s Resp. to Mot. to Dismiss 8, Docket No. 15.) Relatedly, Bank of America contends that Office of the Comptroller of Currency ("OCC") regulations preempt Bennett's claims. Under OCC regulations, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4 (2004). Specifically, a national bank can offer home loans "without regard to state law limitations concerning," among other things, licensing, registration, repayment schedules, and processing, servicing, and participation in mortgages. 12 C.F.R. § 34.4.

The Court disagrees. Bank of America has not identified a federal claim under the NBA that replaces Bennett's asserted state-law causes of action. Only if Congress supplies "the exclusive remedy for the alleged wrong" does the NBA free Bank of America and other national banks from the threat of suit under a state-law cause of action. *King*, 337 F.3d at 425. Hence, even if § 34.4 functions as a federal defense, it does not supply a claim that replaces any of Bennett's claims. Bank of America is also incorrect in arguing that the NBA "preempts state law"; *Beneficial National Bank* held no such thing. The NBA does not oust state laws that indirectly affect lending operations. As the Supreme Court has explained, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). In language particularly pertinent to this case, the Court has explained that "contracts made by national banks 'are governed and construed by State laws.'"

7

*Id.* (citing *Nat'l Bank v. Commonwealth*, 9 Wall. 353, 362, 19 L.Ed. 701 (1870)).

In support, Bank of America offers *Yousif v. Ocwen Mortgage Co., LLC*, 2010 U.S. Dist. LEXIS 83699 (E.D. Mich. Aug. 16, 2010). There, several plaintiffs sued several banks and federal savings associations, alleging the defendants inflated appraisals, misrepresented information during a loan application process, and levied illegal fees. *Id.* at *4. The plaintiffs pled several state-law theories of relief, charging that the defendants failed to comply with Securities and Exchange Commission lending regulations and the Real Estate Settlement Procedures Act. *Id.* at *4-7. The defendants argued that the Home Owners' Loan Act ("HOLA") and its implementing regulations preempted the plaintiffs' claims. *Id.* at *12. *See* 12 U.S.C. § 1461. Using language similar to 12 C.F.R. § 34.4, HOLA's implementing regulations expressly preempt "state laws purporting to impose requirements regarding," among other things, the "sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. 560.2(10). The Court agreed that HOLA regulations preempted the plaintiffs' state-law claims. *Id.* at *14.

The Court is not persuaded that *Yousif* dictates the result of this motion. To assert that a federal regulation converts a state cause of action into a federal claim when the cause of action "affects" the regulation impermissibly broadens the scope of complete preemption. *Id.* at *13. (*See* Def.'s Resp. to Mot. to Dismiss 5.) Without commenting on the preemptive effect of HOLA, Congress has not provided an alternative claim governing the allegations Bennett raises. HAMP's implementing statute merely directs the Treasury Secretary to formulate a program for foreclosure mitigation. *See* 12 U.S.C. § 5219. HAMP itself provides no alternative claim. 12 C.F.R. § 34.4 does not provide the requisite alternative claim. That provision speaks of state laws that "do not apply to national banks" and allows national banks to engage in several

categories of behavior "without regard to state law limitations[.]" 12 C.F.R. § 34.4. This language may describe a preemption defense but provides no alternative form of relief. Hence, the Court concludes the NBA and OCC regulations do not preempt Bennett's claims.

C. *Removal is not proper under the artful pleading doctrine.*

Finally, Bank of America contends removal is proper under the artful pleading doctrine. *See Franchise Tax Bd.*, 463 U.S. at 22. According to that doctrine, a federal court has jurisdiction over an action where a plaintiff has creatively drafted his complaint to avoid naming the federal statute upon which a claim is, in reality, based. *See Yousif*, 2010 U.S. Dist. LEXIS 83699, at *20. According to Bank of America, Bennett has artfully pled his complaint and seeks to evade federal law by mislabeling his claims. This basis for jurisdiction merely restates the first two bases Bank of America asserts. For, if a plaintiff seeks to avoid bringing to court a claim preempted by federal law, or a claim that presents a substantial federal question, he can do nothing but artfully plead his claim in order to give the impression that it originates under state law. For reasons stated above, the Court has already concluded Bennett's claims arise only under state law, such that he did not need to mislabel them to defeat removal.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 10th day of May 2011